UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

                v.                                    Civil Action No.: 08-cv-5109

JEFFREY P. MYERS,

                Defendant.

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY

1.     This case involves unlawful, insider trading by Jeffrey P. Myers ("Defendant"), who purchased the common stock of NSD Bancorp, Inc. ("NSD Bancorp") after receiving an unlawful tip from a Director ("Insider") of NSD Bancorp. During a business meeting on or about September 16, 2004, the Insider provided the Defendant with material, nonpublic information concerning NSD Bancorp's on-going merger negotiations. On September 17, 2004, the Defendant, who had no prior history of trading in NSD Bancorp stock, purchased a total of 1,000 shares. The merger negotiations culminated on October 15, 2004 when NSD Bancorp publicly announced that it had signed a merger agreement with F.N.B. Corporation ("FNB"). Following this announcement, NSD Bancorp's stock rose $12.68 or 52 percent. The Defendant sold his 1,000 shares between January 2005 and February 2005 for a profit of $10,939.

2       By knowingly or recklessly engaging in the conduct described above, and described more fully below, the Defendant violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

## JURISDICTION AND VENUE

3.      The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1] to enjoin such acts, practices and courses of business, and to obtain disgorgement, prejudgment interest and civil money penalties.

4.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, 78aa].

5.      Venue in this district is proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, transactions, practices and courses of business constituting the violations alleged herein occurred within the Southern District of New York and elsewhere, and were effected, directly or indirectly, by making use of the means and instrumentalities of interstate commerce or of the mails, or the facilities of a national securities exchange.

## DEFENDANT

6.      Jeffrey P. Myers, the Defendant, resides in Cranberry Township, Pennsylvania. The Defendant is a real estate attorney licensed to practice in Pennsylvania.

**RELEVANT ENTITY**

7.   NSD Bancorp, Inc. ("NSD Bancorp") was the holding company for Northside Bank, formerly headquartered in Pittsburgh, Pennsylvania. NSD Bancorp's stock was registered under Section 12(g) of the Securities Exchange Act of 1934 and was traded on the NASDAQ national market system. On February 24, 2005, pursuant to its merger agreement with FNB, NSD Bancorp terminated its registration.

**FACTS**

8.   In early 2004, NSD Bancorp's management and the Board of Directors began exploring various strategic alternatives as part of their continuing effort to enhance their banking franchise and to maximize shareholder value. As part of its strategic review, the Board also considered whether it was in the bank's best interest to pursue one or more business combinations with another financial institution.

9.   On July 23, 2004, NSD Bancorp formally engaged an investment banker (the "Investment Banker") to explore and pursue such business combinations.

10.   The Board members were cautioned throughout this process that any information pertaining to a potential merger was confidential and that it was prohibited for them either to trade or to disclose to others any information concerning a potential sale or merger. These reminders reinforced NSD Bancorp's written policy concerning insider trading, which the Board revised in June 2004. The policy specifically prohibited insiders, including Board members, from trading NSD Bancorp securities while in possession of material, nonpublic information and from tipping others about such information. Moreover, the policy described "contemplated mergers" or "acquisitions" as such material information.

11. On or about July 27, 2004, the Investment Banker contacted FNB and four other companies regarding a potential merger with NSD Bancorp.

12. The Board, including the Insider, met on August 24, 2004 to discuss the progress of a potential sale or merger. Management promised to provide Board members with a detailed analysis of each potential partner prior to a scheduled September 10, 2004 Board meeting. Board members also were provided with a document containing material, confidential information about the potential merger, including:

   (i)   expected price for NSD Bancorp's stock in the event of a merger;

   (ii)  continued Board involvement in the combined organization;

   (iii) evaluations of cash versus stock deals;

   (iv)  overall value of the acquirer; and

   (v)   dividend continuation post-merger.

13. On September 10, 2004, four of the companies that the Investment Banker had contacted submitted confidential, non-binding preliminary indications of interest in acquiring NSD Bancorp. FNB was one of those companies and made a preliminary offer of $40 per share of NSD Bancorp stock.

14. On September 15, 2004, the Board, including the Insider, met to review the terms of the non-binding indications of interest submitted by FNB and the other three companies.

15. The Insider and the Defendant were engaged in several joint business ventures unrelated to NSD Bancorp and met repeatedly during this period to discuss their business. One such meeting occurred on September 16, 2004, the day after the Insider

attended NSD Bancorp's meeting and learned the details about the potential offers from FNB and others.

16.     During this September 16 meeting, the Insider provided the Defendant with material, nonpublic information concerning NSD Bancorp's merger negotiations.

17.     Given, among other things, his position at NSD Bancorp, his access to material, nonpublic information and NSD Bancorp's policies against making such disclosures, the Insider knew or was reckless in not knowing that he breached his duty to the company and its shareholders by disclosing such information to the Defendant. The Insider later died of natural causes.

18.     The Defendant knew or was reckless in not knowing of the Insider's breach given, among other things: (i) the circumstances surrounding the tip; (ii) the Defendant's knowledge that the Insider, due to his position with NSD Bancorp, had access to confidential information about the company; (iii) the materiality of the information the Defendant received; and (iv) the Defendant's legal background, which suggests that he understood the Insider's obligation to protect confidential information.

19.     On September 17, 2004, the day after his meeting with the Insider, the Defendant, who had no prior history of trading in the securities of NSD Bancorp, purchased 1,000 shares of NSD Bancorp's stock at an average price of $24 per share on the basis of material, nonpublic information provided to him by the Insider.

20.     On October 15, 2004, NSD Bancorp publicly announced that it had signed a merger agreement with FNB whereby NSD Bancorp shareholders would receive 1.8 shares of FNB common stock for every share of NSD Bancorp stock. In reaction to the

5

announcement, NSD Bancorp's stock rose from an opening price of $24.02 to a closing price of $36.70, an increase of $12.68 or 52 percent.

21. Between January 2005 and February 2005, the Defendant sold all 1,000 shares of his NSD Bancorp stock for a total profit of $10,939.

22. The Defendant's trades in NSD Bancorp's stock were executed by a broker-dealer headquartered in New York City.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5, thereunder**

23. The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 22, above.

24. The Defendant, by knowingly or recklessly engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentality of interstate commerce or of the mails, or of a facility of a national securities exchange:

(a) employed devices, schemes or artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) engaged in acts, practices, and courses of business which operated as a fraud and deceit upon other persons.

25. By reason of the foregoing, the Defendant violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10-b5] thereunder.

**WHEREFORE**, the Commission respectfully requests that this Court:

**I.**

Permanently restrain and enjoin the Defendant from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder;

**II.**

Order the Defendant to disgorge the illegal trading profits described herein;

**III.**

Order the Defendant to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**IV.**

Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____s/_____
Daniel M. Hawke
Elaine C. Greenberg
Amy J. Greer
Tami S. Stark  (TS-8321)
Michael B. Novakovic
Lawrence D. Parrish

Attorneys for Plaintiff:
**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, Pennsylvania 19106
Telephone No.:  (215) 597-3100
Facsimile No.:  (215) 597-2740

Dated: June 4, 2008